```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

ANGEL LYNETTE STONE,

                Plaintiff,

                v.

ANDREW SAUL, COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**18CV574**

**CONSENT**

**Order**

    Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 15 (plaintiff), 18 (defendant Commissioner)). The parties here consented to proceed before a Magistrate Judge (Docket No. 21, reassignment Order, July 9, 2019). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits. This matter is on remand from an earlier application and judicial review, Stone v. Colvin, No. 15CV495.

## PROCEDURAL BACKGROUND

    The plaintiff ("Angel Stone" or "plaintiff") filed an application for disability insurance benefits on November 9, 2012, for an alleged onset date of December 9, 2010 [R. 10]. That

application was denied initially. The plaintiff appeared before the first Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated January 16, 2014, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 10, 874]. The Appeals Council denied plaintiff's request for review on April 20, 2015 [R. 865]. Plaintiff then sought judicial review, Stone v. Colvin, supra, No. 15CV495. On July 14, 2016, Judge Michael Telesca remanded, holding that the ALJ erred in assessing plaintiff's need for frequent bathroom breaks and in failing to consult with a vocational expert, id., Docket No. 15, 2016 U.S. Dist. LEXIS 92420 (W.D.N.Y. July 14, 2016) (Telesca, J.) [R. 847].

Upon remand [see R. 861], a second ALJ conducted a hearing on November 2, 2017, with testimony from a vocational expert [R. 760, 798, 835]. That ALJ rendered a written decision on January 31, 2018, again finding that plaintiff was not disabled [R. 760]. That ALJ's decision became the final decision of the Commissioner when administrative review by the Appeals Council was not sought [R. 756].

Plaintiff commenced this action on November 18, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 15, 18), and plaintiff duly replied (Docket No. 19). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 37-year-old on the date last insured (on December 31, 2016) with a high school education, last worked as an administrative clerk and as a housekeeper cleaner (although the latter position was not performed at substantial gainful activity level) [R. 763, 774].

**MEDICAL AND VOCATIONAL EVIDENCE**

At Step One of the five-step analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 9, 2010 [R. 763-64]. At Step Two, the ALJ then found that plaintiff had severe impairments of interstitial cystitis/endometriosis; bipolar disorder; adjustment disorder with anxiety and depressed mood; and obsessive-compulsive disorder ("OCD") [R. 764-65]. The ALJ, however, deemed as not severe her kidney stones, diabetes, hypertension, and lumbar spine disorder [R. 764]. At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that were listed in the Social Security regulations or medically equal listed impairments [R. 765-67]. (Docket No. 18, Def. Memo. at 14.)

In particular, for the mental impairments under Listings 12.04, 12.06, and 12.08, the ALJ found that "Paragraph B" criteria were not satisfied [R. 765]. Under the factors for understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, for each the ALJ found was only moderate limitations [R. 765-67]. The ALJ also concluded that "Paragraph C" criteria were not met [R. 767]. Plaintiff claimed mental impairments of anxiety, depression and OCD, symptoms of variable moods, irritability, crying spells, panic, paranoia, self-esteem issues, loss of interest in activities once enjoyed, decreased energy, social isolation, confusion, insomnia, compulsive behavior [R. 768]. She has difficulty with activities of daily living and relies upon her husband for assistance [R. 768].

In considering Step Four, the ALJ found that plaintiff had a residual functional capacity to perform sedentary work, with limitations. Specifically, the ALJ found that plaintiff could

3

understand, remember and carry out simple instructions and tasks, with no supervisory duties or independent decision-making or strict product quotas. Plaintiff could work with minimal changes in work routines and processes. She could have frequent interaction with supervisors, coworker and the general public. To work, plaintiff needed two allowed additional restroom breaks up to 5 minutes each. [R. 767.] At Step Four, with this capacity and the inability to perform plaintiff's past work, the vocational expert opined that plaintiff could not perform her past relevant work as an administrative clerk [R. 774, 838-39] (Docket No. 18, Def. Memo. at 15). Turning to Step Five, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as a document preparer clerk, food order clerk, and an assembler, each sedentary exertion level occupations [R. 775, 839] (id.). As a result, the ALJ held that plaintiff was not disabled [R. 776].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

    A.    Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.  Washington, supra, 37 F.3d at 1442.

B.  Treating Physician Standard, Pre-March 2017 Claims

Plaintiff's 2010 claims predate changes to the treating opinion regulations.  The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one.  The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c.  E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.)

6

(treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. The specific issues stem from the ALJ's consideration of plaintiff's mental health. Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence given the ALJ's mischaracterizations and cherry picking from the record. She contends that the ALJ mischaracterized plaintiff's activities of daily living and improperly evaluated NPP Kimberly Conroy's treating relationship and medical opinion. (Docket No. 15, Pl. Memo. at 1, 22-27.) She also asserts that the ALJ failed

7

to take into consideration her hallucinations of Jesus while asserting that plaintiff's normal findings misreads the medical record (id. at 23, 25).

Defendant retorts that plaintiff's arguments call for reweighing of the evidence which is not this Court's rule in judicial review of the administrative decision (Docket No. 18, Def. Memo. at 16-17). Defendant claims that plaintiff never claimed hallucinations in her application and hallucinations were not noted in her function report, at her 2013 hearing, in her 2013 or 2017 consultative psychological examinations (id. at 23-24).

Plaintiff replies that the record indicates that she was undergoing mental health treatment throughout the relevant period and that these limited her ability to work, despite the ALJ's contrary findings (Docket No. 19, Pl. Reply Memo. at 2).

I.      Plaintiff's Activities of Daily Living

Defendant points out instances where plaintiff stated that she cared for her infant daughter (Docket No. 18, Def. Memo. at 21-22) and later when her daughter was an elementary school student (id. at 19). Plaintiff reported that she provided care to her daughter (id. at 21 [R. 158, 402, 43-44 (first hearing transcript), 766, 769 (ALJ decision)]). Defendant also indicates other aspects of plaintiff's daily living that she performed, either by herself or with assistance of her common law husband or others, concluding that there was substantial evidence for the ALJ's findings (id. at 19, 22 (shopping, driving, managing personal finances), 23 (socializing with family and friends); [R. 158, 769]). Plaintiff also did not seek formal psychiatric treatment until 2013 (id. at 20; [R. 516-26, 771]). Defendant argues that plaintiff identified "her physical rather than mental impairments as limiting her activities of daily living" (Docket No. 18, Def. Memo. at 22 (emphasis added)). Defendant next contends that substantial

evidence supports ALJ's view of NPP Conroy's opinion (id. at 25-29). Further, plaintiff did not actually establish a treating relationship with a psychiatric specialist until 5½ years after onset date (id. at 26-27) but plaintiff was prescribed psychiatric medication from her primary care physician (Docket No. 19, Pl. Reply Memo. at 2 [e.g., R. 516, 518, 526]).

II.     Plaintiff's Mental Health Treatment Record

Nurse Conroy in October 2017 reported that plaintiff's symptoms caused a serious inability to meet competitive standards due to her mental impairments [R. 1076-77, 771]. The ALJ discounted this finding because it was not consistent with plaintiff's "self-reported wide range of activities of daily living" including child care, driving, handling finances, and shopping [R. 771]. Plaintiff points out that Conroy was a mental health nurse practitioner rather than a mere registered nurse [cf. R. 771] (Docket No. 15, Pl. Memo. at 25) who prescribed and adjusted plaintiff's mental health medication (id.). Contrary to defendant's contention (Docket No. 18, Def. Memo. at 26-27) that plaintiff did not have a treating relationship with a psychiatric specialist for five and a half years, plaintiff argues that Conroy was her "treating psychiatric provider during and after the insured period" (Docket No. 19, Pl. Reply Memo. at 3). She faults the ALJ for cherry picking the record, disregarding her mental health treatment and hallucinations (Docket No. 15, Pl. Memo. at 25). The ALJ also failed to explain why he was rejecting Conroy's medical opinion, despite defendant's present arguments (Docket No. 19, Pl. Reply Memo. at 3).

III.    Intersection of Alleged Errors

This case boils down to consideration of plaintiff's activities of daily living and how consistent these activities are with Conroy's findings. Both parties point to portions of

9

plaintiff's medical record to support their positions, with defendant pointing out Conroy's mental status examination reports and plaintiff refers to the history of her illness (compare, e.g., [R. 1128-29] with [R. 1127] (notes form Mar. 8, 2017, examination)). These notes present that plaintiff generally within normal limits, continued to hallucinate off and on while still on medication. Defendant notes one portion of the record for the within normal limits mental status report that also states that plaintiff continued to hallucinate Jesus in her bathroom "which has been ongoing without change" [R. 1061, 1216, June 28, 2017, examination report]. The ALJ did not resolve how much plaintiff performed of her activities of daily living without assistance and how much she did with assistance, or the degree of assistance provided. Plaintiff reported, for example, that she did not do laundry and that her common law husband assists her due to back pain [R. 159] but the ALJ found that plaintiff "engage[d] in household chores" [R. 769]. Plaintiff apparently performed what chores she could while assisted by medication when her husband and others were not present [R. 159, 818-19]. She testified that her husband came home from his full-time job to work a second full-time job at home performing chores she could not [R. 159, 818]

While this Court may reach different conclusions from which the ALJ did if reviewing this record and rendering factual findings, the role here is to determine if errors of law occurred. The ALJ erred in not acknowledging contrary points in Conroy's reports, see Goins o/b/o J.D.G. v. Berryhill, No. 16CV6398, 2017 U.S. Dist. LEXIS 182711, at *10 (W.D.N.Y. Nov. 3, 2017) (Telesca, J.) (Docket No. 19, Pl. Reply at 2). The ALJ fails to explain why those findings were rejected with the mental status examinations were accepted.

Thus, plaintiff's motion for judgment (Docket No. 15) is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 15) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 18) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 30, 2019